# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| SALLY NYROP, | Civil No. 11-2498 (JRT/SER) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| INDEPENDENT SCHOOL DISTRICT 11, | |
| Defendant. | |

Richard T. Wylie, **ATTORNEY AT** LAW, 222 South Ninth Street, Suite 1600, Minneapolis, MN 55402, for plaintiff.

Christopher J. Harristhal, **LARKIN HOFFMAN DALY & LINDGREN LTD.**, 7900 Xerxes Avenue South, Suite 1500, Minneapolis, MN 55431, for defendant.

Sally Nyrop ("Nyrop") brings claims under the Rehabilitation Act and the Minnesota Human Rights Act ("MHRA") against her employer, Independent School District 11 ("the District"), because she was not hired for certain positions to which she applied. Specifically, she brings claims of disability discrimination and retaliation.[1] The District brings a motion for summary judgment. For purposes of this motion, the District does not dispute that Nyrop has a disability or that Nyrop was minimally qualified to

---

[1] It appears that Nyrop has abandoned her claim for the failure to accommodate because she has not briefed this issue. The Court finds that Nyrop has not raised a question of material fact regarding this claim; accordingly, the Court will dismiss it.

perform the essential functions of administrative positions for which she applied.  The parties' dispute, for purposes of this motion, is whether Nyrop has raised a question of material fact that she was denied positions for which she applied due to her disability.  Because the Court finds that Nyrop has raised a question of material fact regarding her discrimination claims under the Rehabilitation Act and the MHRA, the Court will deny the District's motion for summary judgment for these claims.  The Court will, however, grant the District's motion for summary judgment on Nyrop's retaliation claims under the Rehabilitation Act and the MHRA.

## BACKGROUND

**I.     BACKGROUND BEFORE JANUARY 1, 2009**

In 2007, Nyrop brought disability discrimination claims against the District, and the District filed a motion for summary judgment.  *Nyrop v. Indep. Sch. Dist. No. 11*, Civ. No. 07-4663, 2009 WL 961372, at *2 (D. Minn. Apr. 7, 2009).  The Court granted the District's motion, holding that Nyrop had not raised a question of material fact that she possessed a disability, that she had a record of a disability, or that she was regarded as having a disability.  *Id.* at *4-5.  This decision was upheld by the Eighth Circuit.  *Nyrop v. Indep. Sch. Dist. No. 11*, 616 F.3d 728, 737 (8th Cir. 2010).

Although Nyrop's briefing regarding this motion devotes significant attention to facts that occurred before the filing of her previous case, the Court will not consider or discuss those facts because Nyrop's complaint only alleges discrimination starting on

January 2, 2009. (*See* Compl. ¶¶ 10-25, Aug. 31, 2011, Docket No. 1.)[2] Accordingly, the Court will consider only those facts occuring after January 2, 2009.

## II. BACKGROUND AFTER JANUARY 1, 2009

### A. Nyrop's Rejected Applications

It appears to be undisputed that, starting in January 2009, Nyrop applied for at least twenty-one positions for which she was rejected. (*See* Compl. ¶¶ 11, 13, 15.) Specifically, she applied for Teacher on Special Assignment ("TOSA") positions to guide secondary schools in forming Professional Learning Communities (positions entitled "Professional Learning Community Coordinators" or "PLC coordinators"). (Decl. of Sally Nyrop ¶ 1, Aug. 3, 2012, Docket No. 42.) She also applied for several other positions, including the position of assistant principal. (*Id.* ¶ 2.) Nyrop claims that her application files for these positions were complete because she included a current application, transcript, license, reference letters, and a resume. (*Id.* ¶ 1.)

### B. Deficiencies in Other Applications

Nyrop claims that she is more qualified than those who were hired for the positions to which she applied. Nyrop points out that some teachers hired as PLC

---

[2] Consideration of facts occurring before 2009 raised by Nyrop in her current complaint is particularly inappropriate because at least some of the individuals who allegedly acted in a discriminatory manner prior to January 1, 2009, were not involved in hiring after January 1, 2009. (*See* Decl. of Sarah Kriewall ¶¶ 14-15, 17, Aug. 14, 2012, Docket No. 50.) Furthermore, consideration of at least some of the facts raised by Nyrop, such as alleged comments by Sarah Kriewall that are discussed in the previous court decisions, is barred by res judiciata. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984) (noting that issue preclusion exists where a matter has already been litigated and decided).

coordinators were not tenured. (*See* Nyrop Decl. ¶ 4, Ex. A.) Also, some PLC coordinators eventually moved on to administrative jobs, which Nyrop claims shows that these positions were "stepping stones" to higher paid and prestigious administrative positions. (*Id.* ¶ 6.) Nyrop also contends that one or two individuals were hired as administrators in the district even though they did not have tenure. (*See id.* ¶¶ 3-5, Ex. A.)[3]

Nyrop further claims that the successful applications of other individuals for at least some of the positions for which she applied were incomplete and lacking the basic ingredients for a successful application. (*Id.* ¶ 3.) Nyrop identifies alleged deficiencies in these applications, including (1) the lack of resumes or current resumes, (2) performance reviews that were non-existent or very old, (3) a lack of letters of interest specific to PLC coordinator positions, and (4) old, obsolete, or nonexistent transcripts. (*See id.* ¶¶ 3-5, Ex. A.)[4]

---

[3] The District responds that there is no requirement that a person who is tenured be selected for a TOSA position over a probationary person. (Decl. of Mary Wolverton ¶¶ 7-9, Aug. 14, 2012, Docket No. 52.) The District also contends that tenure is not a criterion for hiring administrators such as principals and assistant principals. (*Id.*) The District further argues that, while tenure may be considered when selecting candidates for a TOSA position, it is not required by law or contract and never controls the decision. (*Id.*) Probationary teachers (meaning those who do not have tenure at Anoka-Hennepin) are sometimes hired for TOSA positions. (*Id.*; *see also* Kriewall Decl. ¶ 10.)

[4] The District responds that Nyrop has no evidence that these issues are related to qualifications for the PLC position. Furthermore, the District claims that while it requests a cover letter, resume, and letters of reference, they are not required, and applicants are considered for interviews and positions even without these additional materials. (Wolverton Decl. ¶¶ 4-6; Kriewall Decl. ¶ 8.)

Nyrop also identifies other evidence of alleged discrimination and of candidates allegedly being treated differently than her.[5] For example, Nyrop points to the promotion of Ann Sangster to Assistant Principal at Andover Elementary in June 2012. Sangster did not have a principal's license when she was hired. Nyrop claims that she was more qualified to fill the position of an assistant principal than Sangster because she had previous experience in an assistant principal role[6] and obtained her license in 2003.[7]

---

[5] For example, she points to a comment made by Laurie Resch, the Director of Elementary Education. During the 2010-11 and 2011-12 school years, Nyrop was a TOSA at the District's Employee Service Center after her previous position was eliminated. (Aff. of Sarah Kriewall, Ex. 14 at 86-87, June 21, 2012, Docket No. 27.) In this position, Nyrop served as a videographer, taping teachers exhibiting best practices in the profession and preparing videos for presentations. (Third Decl. of Richard T. Wylie, Ex. I (Dep. of Sally Nyrop ("Nyrop Dep.") at 9-10), Aug. 3, 2012, Docket No. 45.) According to Nyrop, Resch told her during her year-end evaluation for this position on June 8, 2012, "I know you do not like the tasks involved in your current position. I know what kind of job you wished for, but under the circumstances, obviously that isn't going to happen." (Nyrop Decl. ¶ 9.) The District responds that Nyrop has been inconsistent in how she has characterized this statement because she previously claimed that Resch told her that "'with the way things are' or 'with what's gone on' she [Nyrop] would never get another job in the school district." (First Decl. of Richard Wylie ¶ 5, July 2, 2012, Docket No. 32.) Resch denies making any statement of this kind. (Second Decl. of Laurie Resch ¶ 3, Aug. 14, 2012, Docket No. 51.)

[6] For the 2008-2009 school year, the District placed Nyrop in a TOSA position at Sandburg Middle School. (Kriewall Aff., Ex. 14 at 86.) Nyrop claims that she was conducting the duties of an assistant principal in this position. (Nyrop Dep. 6.) At first, Nyrop claims that the principal called her the "assistant principal," as he had called the former employee performing her duties. (*Id.*) The principal then informed her about two weeks into the school year that someone had told him that she was no longer to be called the assistant principal. (*Id.*) It is unclear who told him that she could no longer be called the assistant principal. (*Id.*) Nyrop provides details about the tasks that she completed in this position. She says they are the same tasks as other employees called "assistant principals," one of whom later went on to become a principal. (Nyrop Decl. ¶¶ 11-12.) The District responds that, during the 2008-2009 school year, Nyrop was hired as a TOSA at Sandburg Middle School and not as an assistant principal. (Kriewall Decl. ¶ 12.)

[7] The District responds that this is not evidence of discrimination because Nyrop did not apply for the Assistant Principal position awarded to Sangster. (Kriewall Decl. ¶ 18.) Also, the

(Footnote continued on next page.)

### C. Reasons for the District's Actions

The District claims that the reason Nyrop's applications during the time period at issue were unsuccessful was because she had previously applied such a large number of times for similar positions, unsuccessfully, and was thus deemed unqualified. In Nyrop's charge of discrimination in June 2007, she acknowledged that she had applied for at least fifty administrative positions in the District. (Aff. of Sarah Kriewall, Ex. 9, June 21, 2012, Docket No. 27.) The Eighth Circuit determined that those denials did not constitute disability discrimination. *Nyrop*, 616 F.3d 728. The District thus states that it was justified in using those rejections to determine that she was not qualified.[8]

The District also notes that Nyrop unsuccessfully applied for administrative positions in other school districts, such as Alexandria, Edina, Eden Prairie, Hopkins, Columbia Heights, New Brighton, Minnetonka, Osseo, Washington County, Centennial, Fridley, and Spring Lake Park. (Third Decl. of Richard T. Wylie, Ex. I (Dep. of Sally

---

(Footnote continued.)

District claims that it is not uncommon for people who lack a principal's license to apply for an assistant principal or principal opening and to be hired for the position. (Wolverton Decl. ¶ 10.)

[8] Beyond this general claim of reliance on Nyrop's previously rejected applications, the District provides a more specific description of its reasons for rejecting Nyrop's applications in an interrogatory. (Kriewall Aff., Ex. 14 at 84-85.) The Court will consider the reasons set forth in the interrogatory but will afford them little weight for two reasons. First, the District has not disputed, for purposes of this motion, that Nyrop was minimally qualified for the positions to which she applied. Second, and more importantly, the District did not discuss the reasons outlined in the interrogatory in its briefing or provide evidence to support the sufficiency of its reasons for rejecting her applications starting in 2009. Instead, it provided a chart that listed the positions for which Nyrop was rejected, stating vaguely that other candidates who "best met the needs of the position w[ere] selected." (*See id.* at 94-104.)

Nyrop ("Nyrop Dep.") 12).)  Two of these districts interviewed her and none have offered her a job.  (*Id.* 12-13.)

### D. Nyrop's Qualifications

Nyrop claims that she was qualified for the positions for which she applied.  She describes her relevant experience as including: being a lead teacher at a school; chairing a staff development committee; writing a grant request that generated a $100,000 grant for technology and other subject areas; writing educational plans for disabled students; supervising standardized testing; supervising lunchtime and after school activities; supervising school buses and writing bus reports; evaluating student records and testing results of potential special education students; coordinating staff development to support best practices in teaching the "constructive response" model, including consulting with teachers on ways to improve their teaching and consulting with teachers concerning students "in trouble"; counseling and monitoring approximately thirty students with academic (and often behavioral) problems; completing a principal's administrative internship in 2002-2003 in elementary and secondary education; handling a school lockdown; and completing a specialist degree from St. Thomas University and a master's degree from St. Cloud State University.  (Nyrop Decl. ¶¶ 10-13, 15, 18.)

## ANALYSIS

### I. STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of

law.  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts.  *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

## II.     DISCRIMINATION

Nyrop must prove her discrimination claims under the three-step burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).[9]  There must be a genuine issue of material fact regarding the steps of the McDonnell Douglas analysis to defeat a defendant's motion for summary judgment.  *See Riley v. Lance, Inc.*, 518 F.3d 996, 1000 (8th Cir. 2008).

Under the McDonnell Douglas framework, an individual alleging employment discrimination must first demonstrate a prima facie case of discrimination.  *Id.*  To show a prima facie case, an applicant for a position must show that: (1) she is in a protected

---

[9] Nyrop has not raised direct evidence of discrimination so she must rely on the McDonnell Douglas test.  *See Young-Losee v. Graphic Packaging Int'l, Inc.*, 631 F.3d 909, 912 (8th Cir. 2011).  Resch's statements are not direct evidence of discrimination because Nyrop has offered no proof that Resch was a decisionmaker with regard to any of Nyrop's attempts at promotions after January 1, 2009.  (*See* Second Resch Decl. ¶ 4); *Browning v. President Riverboat Casino-Missouri, Inc.*, 139 F.3d 631, 635 (8th Cir. 1998) (holding that direct evidence does not include statements by those not involved in the decisionmaking process).

class; (2) she was qualified for the open position; (3) she was denied that position; and (4) the employer filled the position with a person not in the same protected class. *See Torgerson v. City of Rochester*, 643 F.3d 1031, 1046 (8th Cir. 2011) (citing *Dixon v. Pulaski Cnty. Special Sch. Dist.*, 578 F.3d 862, 867-68 (8th Cir. 2009)).[10]

If a plaintiff raises a prima facie case, the burden shifts to the employer to produce evidence of a legitimate, non-discriminatory reason for the termination. *Id.* An employer need not prove a nondiscriminatory justification by a preponderance of the evidence. *Floyd v. State of Mo. Dep't of Soc. Servs., Div. of Family Servs.*, 188 F.3d 932, 936 (8th Cir. 1999). Instead, the employer need only offer a "clear and reasonably specific" nondiscriminatory explanation, *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 258 (1981), "regardless of its persuasiveness," for the presumption in plaintiff's favor to disappear and the burden to shift back to the plaintiff, *Buchholz v. Rockwell Int'l Corp.*, 120 F.3d 146, 150 (8th Cir. 1997).

If the employer comes forth with a legitimate, non-discriminatory reason for an employment decision, the plaintiff must show by a preponderance of the evidence that the employer's reasons for termination were a pretext for intentional discrimination. *Torgerson*, 643 F.3d at 1046. A plaintiff must raise a genuine issue of material fact that (1) that the employer's explanation is "unworthy of credence because it has no basis in

---

[10] The Court will analyze Nyrop's claims under the MHRA and the Rehabilitation Act under the same standards. *See Buboltz v. Residential Advantages, Inc.*, 523 F.3d 864, 868 (8th Cir. 2008), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011).

fact," or (2) that "a prohibited reason more likely motivated the employer." *Id.* at 1047 (internal quotation marks and alterations omitted). "Proof of pretext, coupled with a strong prima facie case, may suffice to create a triable question of fact." *Id.* at 1046.

### A.   Prima Facie Case

The Court must first determine if Nyrop has raised a genuine issue of material fact regarding the elements of her prima facie case. All four elements of the prima facie case appear to be undisputed at this stage: (1) Nyrop is in a protected class; (2) Nyrop was qualified, at least minimally, for the open positions; (3) Nyrop was denied positions for which she applied; and (4) the District filled the positions with a person not in the same protected class.[11]  *See Torgerson*, 643 F.3d at 1046.

### B.   Legitimate Nondiscriminatory Reason

Next, the burden shifts to the District to raise a legitimate, nondiscriminatory reason for its actions. The main argument that the District makes for why it failed to select Nyrop is her multiple applications for similar positions. Because this explanation focuses on none of Nyrop's specific qualifications, the Court finds this explanation to be unpersuasive. However, the Court must accept this explanation "regardless of its persuasiveness." *See Buchholz*, 120 F.3d at 150. The District must merely "articulate[] lawful reasons for the action; that is, . . . produce admissible evidence which would allow

---

[11] The District has not suggested that it filled the positions for which Nyrop applied with individuals with disabilities, nor has it challenged whether Nyrop has established this final element of her prima facie case.

the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Burdine*, 450 U.S. at 256-57 (holding that "the employer's burden is satisfied if he simply explains what he has done or produces evidence of legitimate nondiscriminatory reasons." (internal quotation marks and alterations omitted)).[12]  Here, although the District has provided little support for its articulated nondiscriminatory reason for failing to promote Nyrop, it has produced evidence that would allow a rational trier of fact to conclude that the employment decision was not motivated by discriminatory animus.  Accordingly, the Court finds that the District has satisfied its burden.

### C. Pretext

Finally, the Court must consider the issue of pretext.  Specifically, Nyrop must raise a genuine issue of material fact that (1) that the District's explanation is "unworthy of credence because it has no basis in fact," or (2) "that a prohibited reason more likely motivated the employer."  *See Torgerson*, 643 F.3d at 1047 (internal quotation marks and alterations omitted).  The circumstances must permit a reasonable inference that Nyrop was terminated due to the discriminatory reason she alleges.  *See Spencer v. Stuart Hall Co.*, 173 F.3d 1124, 1128 (8th Cir. 1999).

---

[12] *See also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 & n.4 (1993) (stating that "rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination" but "there must be a finding [by the finder of fact] of discrimination" (emphases omitted)).

The Court finds that Nyrop has raised a question of material fact regarding pretext. Nyrop has raised facts suggesting that the District's explanation for failing to promote her is unworthy of credence because inferior applicants were hired for the positions for which she applied. *See Harding v. Gray*, 9 F.3d 150, 153-54 (D.C. Cir. 1993) ("[W]hen an employer acts contrary to his apparent best interest in promoting a less-qualified [non-disabled] applicant, it is more likely than not that the employer acted out of a discriminatory motive."). Nyrop argues that she has a broad background and experience in her field, tenure, a principal's license, and experience performing the duties of an assistant principal. She further claims that she fully completed the applications required for the positions for which she applied, expressing specific interest in those positions. Despite her level and experience and her complete applications, it appears that applicants without tenure, without complete applications specific to the positions at issue, and without principal's licenses and Nyrop's level of experience have been hired for at least some of the positions for which she has applied.

In light of these facts, the Court finds that a jury could reasonably conclude that the District's explanation for failing to promote Nyrop is unworthy of credence because it has no basis in fact and that Nyrop was not hired for positions to which she applied because of discrimination.[13] *See Rothmeier v. Inv. Advisers, Inc.*, 85 F.3d 1328, 1336 (8th

---

[13] *See Chock v. Nw. Airlines, Inc.*, 113 F.3d 861, 864 (8th Cir. 1997) ("Where, as here, the employer contends that the selected candidate was more qualified for the position than the plaintiff, a comparative analysis of the qualifications is relevant to determine whether there is reason to disbelieve the employer's proffered reason for its employment decision . . . . [A] comparison that reveals that the plaintiff was only similarly qualified or not as qualified as the

(Footnote continued on next page.)

Cir. 1996); *Tanner v. Entergy Ark.*, No. 4:08-CV-00099, 2009 WL 1955232, at *5-6 (E.D. Ark. July 6, 2009) (denying summary judgment where plaintiff offered reasons why he was more qualified than applicant hired, despite defendant's assertion that plaintiff was simply offering his subjective opinion that he believed he was more qualified than the hired applicant). Denying summary judgment is particularly appropriate here because the District has offered little explanation or support[14] for its reasons for failing to promote Nyrop, other than the fact that she had previously applied for and been rejected for administrative positions.[15] Accordingly, the Court will deny the District's motion for summary judgment on this claim.

_____
(Footnote continued.)

selected candidate would not raise an inference of racial discrimination."), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011).

[14] For the reasons explained above, the Court gives little weight to the reasons listed in the District's interrogatory.

[15] The District has disputed that it seriously considers factors such as tenure and the possession of a principal's license in deciding whom to hire. However, the District has not clearly set forth the specific qualifications it considered for the positions to which Nyrop applied since 2009 or raised facts showing why the applicants hired were, in fact, more qualified than Nyrop. Particularly because it is unclear what criteria the District used in evaluating the applications for the positions at issue, the Court finds that a reasonable jury could conclude that Nyrop was objectively more qualified than those hired and that the District's explanation was unworthy of credence. *See McCullough v. Real Foods, Inc.*, 140 F.3d 1123, 1129 (8th Cir. 1998) (noting that "subjective criteria for promotions are particularly easy for an employer to invent in an effort to sabotage a plaintiff's prima facie case and mask discrimination" (internal quotation marks omitted)); *see also Torgerson*, 643 F.3d at 1049-50 (describing relevance of subjective considerations).

## III. RETALIATION

The Court must also consider whether Nyrop has raised a genuine issue of material fact regarding her retaliation claim. Nyrop has devoted almost no attention to this claim in her briefing, but her complaint appears to allege that she was retaliated against because she filed a complaint with the Minnesota Department of Human Rights and a complaint in United States District Court against the District in 2007. (*See* Compl. ¶¶ 9-10.) She appears to allege that she was retaliated against by, for example, being rejected for positions for which she applied, being placed in an office with poor air conditioning, being assigned to work in conditions where she was isolated from her peers, and being denied the opportunity to participate in meetings and continuing education. These alleged retaliatory events occurred starting in 2009. (*See id.* ¶¶ 11-16, 20-23.)

To establish a claim for retaliation, "[f]irst, the plaintiff must put forth a prima facie case of retaliation. To establish a prima facie case of retaliation, an employee must show that he engaged in protected activity; he suffered a materially adverse action that would deter a reasonable employee from making a charge of employment discrimination; and there is a causal connection between the protected activity and the adverse action." *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 856 (8th Cir. 2012) (citations and internal quotation marks omitted). "[I]f the plaintiff puts forth a prima facie case, the employer may rebut the resulting presumption of discrimination by articulating a legitimate, non-retaliatory reason for the adverse employment action." *Id.* at 856-57. "Finally, if the

employer proffers a [neutral] rationale, the plaintiff may attempt to refute the asserted reason as mere pretext." *Id.* at 857.

The Court will grant the District's motion for summary judgment on Nyrop's retaliation claim. Nyrop has raised no direct evidence of retaliation. Because her complaints were in 2007 and the retaliatory events allegedly occurred starting in 2009, she also has not shown a temporal connection sufficient to support an inference of retaliation. *See, e.g., Tyler v. Univ. of Ark. Bd. of Trs.*, 628 F.3d 980, 986 (8th Cir. 2011) (noting that in cases where the temporal proximity "is very close," a plaintiff can "rest on it exclusively" for purposes of establishing a prima facie case). In sum, Nyrop has not shown any evidence suggesting a causal connection between the protected activity and the adverse actions. Accordingly, the Court will dismiss this claim.

This case will be placed on the Court's next available trial calendar.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED that** Defendant's Motion for Summary Judgment [Docket No. 24] is **GRANTED in part** and **DENIED in part** as follows:

1. The motion regarding Plaintiff's discrimination claims under the Rehabilitation Act and the Minnesota Human Rights Act is **DENIED**.

2. The motion regarding Plaintiff's retaliation claims under the Rehabilitation Act and the Minnesota Human Rights Act is **GRANTED.** The claims of retaliation are **DISMISSED with prejudice.**

3. The motion regarding Plaintiff's failure to accommodate claims under the Rehabilitation Act and the Minnesota Human Rights Act is **GRANTED.** The claims of failure to accommodate are **DISMISSED with prejudice.**

DATED: _____**DRAFT**_____
at Minneapolis, Minnesota.                                JOHN R. TUNHEIM
                                                          United States District Judge